HOTALING *et al. v.* MARSH *et al.*

(*Supreme Court, Special Term, New York County.*    December 3, 1888.)

1. WILLS—CONSTRUCTION—REMAINDER TO AFTER-BORN ISSUE.

Testator devised one-third of his realty to his widow for life, remainder to his grandchildren who should survive her.    His residuary estate was given to his grandchildren, to be paid to them, respectively, as they should attain their majority, with a provision that if after his death children should be born to his daughter, H., they should share in the estate devised to the widow in preference to the other grandchildren, so that each might receive the same amount.    A partial division of the residuary estate was made before the birth of a daughter to H., and later, before the final distribution, the widow died.    *Held*, that the after-born daughter should be preferred in the distribution of the proceeds of the widow's third to the extent of the shares of the residuary estate received by the other grandchildren; it being testator's evident intention that grandchildren born after his death, whether before or after the division of the residuum, should receive an equal share of his estate with those born before his death, though their enjoyment of it was to be postponed until after his widow's death.

2. SAME—PERPETUITIES.

The provision for after-born children does not violate the statute against perpetuities, the absolute ownership of the estate not being suspended for more than two lives in being at the creation of the estate, as all the grandchildren take at the widow's death, though in making division after-born children are to be preferred to others.

3. SAME—REMAINDER AFTER DOWER.

The estate of the remainder-men is not affected by the fact that the widow elects to take as dowress instead of devisee.

At chambers.    On motion to confirm referee's report.

In May, 1859, Abel S. Peters died, leaving his widow, Harriet Peters, a daughter, Harriet A. Marsh, and several grandchildren, the issue of his two deceased sons.    By his will he devised one-third of his realty to his widow for life, remainder to his grandchildren who should survive her.    His residuary estate was given to his grandchildren, and he provided that, if other issue should be born to his daughter, Harriet Marsh, after his decease, they should share in the estate left to the widow in preference to the other grandchildren, so that each might receive the same amount.    In the same year this action for the partition of his land was brought, and in 1861 a sale of the real estate was directed, and it was adjudged that the widow's interest vested in her as dower, while the other parties took as devisees.    It was further ordered that the widow's third should be paid into court and invested, that the income might be paid to her for life, after her decease the principal to be paid to the grandchildren of the testator who should survive her.    It was provided, however,

that the decree might be opened to let in such issue of Mrs. Marsh as should be born after testator's death, and before that of his widow; and that, if the residuary estate should have been divided before the death of the widow, the after-born children should be preferred in the division of the fund set apart for the widow, to make their shares equal with those of the other grandchildren.    Before January 30, 1870, each of the grandchildren *in esse* had received $8,211 of the estate, and one piece of land on Reade street was yet unsold, and other funds were in the hands of the court, undistributed.    On that day a daughter, Grace, was born to Mrs. Marsh, and in the same year the executors filed their final account, upon which the infant, Grace, was held not to be entitled to share in the proceeds of the residuary estate then being for distribution.    In 1887, Mrs. Peters died, and a reference was ordered to ascertain the proper amount of the remainder of the estate to be distributed to each.    The referee reported that Grace was entitled to share equally with the other grandchildren who survived the testator in the one-third that had been set apart for Mrs. Peters' dower, and to have the judgment opened for that purpose; that she was not entitled to be preferred in the sum of $8,211, the amount paid to the other grandchildren from the residuary estate before her birth.    Pending the proceedings, the interest of one of the grandchildren was sold in bankruptcy proceedings, and purchased by Mrs. Abbie Simpkins, who, being thus interested in the distribution, excepted to the report, claiming the portion awarded to Miss Grace Marsh.

*William H. Atwood*, for surviving plaintiff.    *Valentine Marsh*, for defendants Harriet A. Marsh and others.    *Charles S. Simpkins*, for defendant Abbie Simpkins.    *J. C. Gulick*, for defendant Grace S. Marsh.

BARRETT, J.    It was the intention of Abel S. Peters that the remaindermen should resort to his widow's interest, whether she took as devisee or as dowress; and it was also his intention that after-born children of his daughter, Harriet Ann Marsh, should share in that interest, whether his widow took as devisee or dowress.    Mr. Peters was a layman, and he drew his own will.    When in the last paragraph of the third section he speaks of the estate left his wife, he refers to the estate left to her by his will if she accepts the provision made for her, or vested in her by his death if she declines such provision.    It is the *corpus* of her estate, however created, which, upon her death, he there directs to be divided.    The residue is not to be confounded with his general residuary estate specifically devised to his grandchildren.    That was to be divided so that these grandchildren should receive their shares as they attained their majority.    He looked, however, to the principal reserved for the widow's interest to accomplish another purpose, namely, the protection of his daughter's after-born children.    He did not wish to delay the division of his general residuary estate, or to complicate it with a provision for his daughter's after-born children.    He evidently believed equality could ultimately be produced by preferring such after-born children in the division of the estate enjoyed by the widow during her life; and he was willing to postpone the provision for such after-born children until his widow's death.    It must have been upon reasoning like this that the decree herein was made.    That decree seems to me to be binding, and to settle the present question.    The subsequent decree in the action for construction does not conflict with my present judgment, nor with the decree herein.    It was the general residuary estate devised by the third section of the will upon which the court gave its opinion in the action for construction.    It was in that residuary estate, not in the estate then enjoyed by the widow, that the court held no after-born children were entitled to share.    The same distinction is applicable to the surrogate's decree.    It was doubtless to facilitate the settlement of his estate, and yet do justice to after-born children, that Mr. Peters confined the latter to the estate enjoyed by his widow.    There is nothing in the point that the infant was born before

the division.    The testator plainly intended to make provision for a child born at any time after his death.    What he meant was, that a child born even after the division should be let in.

Nôr do I think that the provision in question is void under the statute against perpetuities.    The absolute ownership is not suspended for more than two lives in being at the creation of the estate.    All the grandchildren take upon the death of the widow, though the division is to be made as provided in the last paragraph of the third section of the will.    It follows, the infant Grace S. Marsh is entitled to the preference claimed, and the report should be modified accordingly.